# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

MATTHEW MARTINEZ,

      Plaintiff,

v.                                                                                                             CV 07-0439 JB/WPL

CHRIS VALDEZ AND THOMAS SALAZAR,

      Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

Matthew Martinez seeks relief under 42 U.S.C. § 1983 against New Mexico State Police Officers Chris Valdez and Thomas Salazar. (Doc. 1 at 2.) According to Martinez, Valdez and Salazar deprived him of property without due process in violation of the Fourteenth Amendment and violated his Fourth Amendment right to be free from an unreasonable search and seizure. In an Order issued on October 10, 2007, I instructed Defendants to file a *Martinez* report "addressing whether the traffic stop of February 22, 2007 gave rise, either directly or indirectly, to any pending or resolved criminal charges against Plaintiff." (Doc. 11 at 2-3.) Defendants filed the *Martinez* report on October 30, 2007. (Doc. 12.) As part of this report, Defendants seek summary judgment of Martinez's claims. (*Id.* at 2.)

### BACKGROUND

### Traffic Stop and Seizure of Martinez's Vehicle

At approximately 11:40 a.m. on February 22, 2007, Valdez and Salazar, along with Agents Lorenzo Aguirre and Joey Gallegos, observed Martinez's green Pontiac Grand Am parked next to a blue Chevrolet S-10. (Doc. 12 at ¶¶ 1-3, 7.) According to his affidavit, Agent Gallegos knew

"Matthew Martinez as a drug dealer."[1] (Gallegos Aff. at ¶ 8.) Gallegos "had received information that Martinez [trafficked] narcotics from the green Pontiac Grand Am" and that "[t]he Adult Probation and Parole Office had received information the same day as the arrest that [] Martinez was dealing heroin and delivering it in the Green Pontiac Grand Am." (*Id.* at ¶ 8.) The officers also observed two individuals standing next to the two vehicles.

Gallegos informed the other officers of Martinez's background. (*Id.* at ¶ 9.) The agents saw an individual named David Archuleta,[2] along with another individual, standing next to the vehicles. According to Defendants, Archuleta was a known drug user in the community. (*Id.* at ¶ 4-6.) At this point, Valdez "turned on the emergency equipment for his unmarked unit and proceeded to initiate a traffic stop on the vehicles . . . ." (Aguirre Aff. at ¶ 4.) As the officers approached the vehicles to initiate a traffic stop, Martinez "drove off and proceeded down the road." (Gallegos Aff. at ¶ 11.)

Valdez stopped the Grand Am. According to Defendants, Martinez "appeared to be conducting a drug deal with the individuals in the blue Chevrolet S-10." (Doc. 12 at ¶ 39.) After stopping Plaintiff's car, Valdez explained to Martinez the reason for the stop and asked him to step out of the car. (*Id.* at ¶ 40.) In response, Martinez explained that he had been stopped merely because the two individuals standing in the road wanted a ride. (*Id.* at ¶ 41.) Valdez then sought Martinez's consent to search the vehicle. According to Defendants, Martinez explained that "anything found inside of the vehicle was not his . . . [and] that there might be prescription drugs inside of the vehicle." (*Id.* at ¶¶ 44-45.) After noticing that "Martinez was sweating and very nervous, putting his hands in

---

[1] Matthew Martinez is also known as Matthew Goat. (Gallegos Aff. Ex. 1 at 4.) For purposes of this PFRD I will refer to him as Matthew Martinez.

[2] David Archuleta is also known as David Montoya. (Gallegos Aff. ¶ 5.) I will refer to him throughout this PFRD as David Archuleta.

and out of his pockets," Gallegos asked Martinez to empty his pocket. Upon this request, Martinez pulled from his pocket a large roll of money. (*Id.* at ¶¶ 46, 48.) Martinez stated that the money had been won at a casino and that his mother could provide a receipt. (*Id.* at ¶¶ 49-50.) The agents again sought Martinez's consent to search the vehicle. Martinez refused. (*Id.* at ¶¶ 51-52.) Gallegos then "concluded that he had probable cause to obtain a search warrant for Martinez's vehicle" and "advised Martinez he was free to leave." (*Id.* at ¶¶ 53-54.) At this point, Martinez's car was "sealed and towed . . . to the New Mexico State Police and remained in custody the entire time where it was secured." (*Id.* at ¶ 55.)

While Valdez questioned Martinez, Aguirre and Gallegos "stayed behind with the blue" truck.[3] (Aguirre Aff. at ¶ 8.) Aguirre confronted Paul Rivera, one of the individuals standing in the road, and asked if he "had any weapons on his person." (Doc. 12 at ¶ 21.) According to Aguirre, Rivera stated that "he did not have any weapons" but that he "had a syringe with 'Chiva,' a slang word for heroin, on him." (*Id.* at ¶¶ 22-23.) Aguirre retrieved the syringe from Rivera's pocket and arrested him. (*Id.* at ¶¶ 26, 33-37.)

### Subsequent Search of Martinez's Vehicle

On Thursday, February 22, 2007, Gallegos "completed a Search Warrant for the 2000 Pontiac Grand Am . . . ."[4] (Gallegos Aff. at ¶ 34.) On February 23, after Judge Sanchez approved the search

---

[3] It is unclear if Valdez was alone in his stop of Martinez's vehicle, or if another officer accompanied him. Regarding this detail, Defendants' *Martinez* report conflicts with Aguirre's affidavit. The *Martinez* report specifies that "Agent Gallegos then asked Martinez to pull whatever he had out of his pockets to ensure the officer's safety." (Doc. 12 at ¶ 47.) While this coincides with Gallegos's statement that "I then asked Matthew Martinez to pull whatever he had out of his pockets to ensure the officer's safety" (Gallegos Aff. at ¶ 20), it conflicts with Aguirre's statement in his affidavit that "Agent Joey Gallegos and I stayed behind with the blue in color truck" (Aguirre Aff. at ¶ 8).

[4] In his Response to Defendants' *Martinez* report, Martinez questions why there are "conflicting dates for the alleged incident." (Doc. 13.) Martinez provides three documents to substantiate his allegation that he

warrant, Gallegos searched Martinez's vehicle. Inside, Gallegos found "a clear plastic baggie containing a large amount of a brown rock-like substance" that field tested positive for heroin. (Doc. 12 at ¶ 65.) Gallegos found several other objects, such as two razor blades, pliers, and scissors, that all tested positive for the presence of heroin. (Doc. 12 at ¶ 65.) Gallegos, along with Joseph Salazar and Daniel Barela, both with the New Mexico Corrections Department Adult Probation and Parole Office, were present at the time of the search of Martinez's vehicle.[5] (*Id.* at ¶ 80.)

In his Complaint, Martinez seeks unspecified "injunction relief," [sic] money damages "special damages," "general damages," damages for mental anguish, and punitive damages for the violation of his due process rights under the Fourteenth Amendment and the violation of his Fourth Amendment right to be free from unreasonable searches and seizures. (Doc. 1 at 3.)

## DISCUSSION

As part of their *Martinez* report, Defendants contend they are entitled to summary judgment on each of Martinez's claims. Defendants contend that Plaintiff's Due Process claim should be

---

received the same charge on several different days. First, Martinez provides an Affidavit for Arrest Warrant completed by Gallegos on March 1, 2007 seeking an arrest warrant for Martinez. (Doc. 13; Doc. 12 Gallegos Aff. Ex. 6 at 4.) Second, he provides an Arrest Order issued by Adult Probation and Parole officers Joseph A. Salazar and Daniel S. Barela, seeking Martinez's arrest due to the officers' belief that Martinez "violated the conditions of his parole/probation/furlough" for trafficking drugs. (Doc. 13.) This Arrest Order appears to have been completed on February 23, 2007. (Doc. 13.) Third, Martinez provides an Incident Report prepared by Gallegos on February 23, 2007 describing the officers' encounter with Martinez. This Incident Report lists the occurrence date as 2/23/2007. Clearly, this conflicts with other documents specifying that the incident on February 22, 2007. Martinez, however, fails to demonstrate that this conflict arises out of anything other than a recording error. Moreover, such an error bears no relevance to the underlying legal dispute between Martinez and Defendants.

[5] Martinez was arrested on March 15, 2007. (Doc. 12 at ¶¶ 109-113.) On April 19, 2007, a Grand Jury indicted Martinez on several charges arising out of the incident on March 22, 2007. (*Id.* at ¶ 138.) On September 20, 2007, a Notice of Dismissal of Grand Jury Indictment was filed." (*Id.* at ¶ 139.) Because Martinez challenges only the initial traffic stop and the seizure and search of the Pontiac Grand Am, I need not address these subsequent legal proceedings.

dismissed because the state provides Plaintiff with an adequate tort remedy for the alleged deprivation. (Doc. 12 at 19.) Additionally, Defendants contend that the "court should dismiss Martinez's fourth amendment illegal seizure and search claim because" probable cause existed to search the vehicle and that the officers are entitled to qualified immunity. (Doc. 12 at 25.)

### Summary Judgment Standard

Summary Judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "[S]ummary judgment cannot be granted merely because a nonmovant fails to submit affidavits or other materials supporting existence of a genuine issue of material fact." *Regents of the Univ. of N.M. v. Knight*, No. CIV 99-577, 2000 U.S. Dist. LEXIS 22376, at *15 (D.N.M. Sept. 20, 2000). Rather, "[t]he movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003). A party "that will not bear the burden of persuasion at trial need not negate the nonmovant's claim. Such a movant may make its prima facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* "A material fact is one which may affect the outcome of the suit under the governing law." *Rocking Chair Enters., L.L.C. v. Macerich SCG, Ltd. P'ship*, 407 F. Supp. 2d 1263, 1265 (W.D. Okla. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

### Qualified Immunity

Section 1983 allows a "plaintiff to seek money damages from government officials who have

5

violated his *Fourth Amendment* rights." *Wilson v. Layne*, 526 U.S. 603, 609 (1999). Once the defendant raises the defense of qualified immunity, however, the "plaintiff has the burden to establish both that defendant's actions violated a constitutional or statutory right and that the right was 'clearly established' at the time of the relevant conduct." *Jackson v. Austin*, 241 F. Supp. 2d 1313, 1321 (D. Kan. 2003). If the plaintiff carries this two-part burden, the defendant must then demonstrate that no material issues of fact remain as to whether the defendant's "actions were objectively reasonable in light of the law and the information he possessed at the time." *Id.* The relevant question for purposes of qualified immunity is whether a reasonable officer "could have believed his acts were lawful in light of the clearly established law and the information the official possessed at the time of his allegedly unlawful conduct." *Harris v. Berner*, No. 92-2110-GTV, 1993 U.S. Dist. LEXIS 6375, at *6 (D. Kan. April 28, 1993). "A defendant who makes such a showing of objective reasonableness is entitled to summary judgment unless the plaintiff can demonstrate that there are factual disputes relevant to the defendant's claim to immunity." *Martin v. Bd. of County Comm'rs*, 909 F.2d 402, 405 (10th Cir. 1990).

## Martinez's Fourth Amendment Claims Against Defendants in their Individual Capacity

Martinez alleges that Defendants violated his Fourth Amendment right against an unreasonable search and seizure by "executing a traffic stop, and then, and there, confiscating a 2000 Pontiac Grand Am . . . ."[6] (Doc. 1 at 2.) Martinez also alleges that the search warrant obtained

---

[6] The Pontiac Grand Am driven by Martinez on February 22, 2007 was owned by his mother, Elsie Martinez. Although not discussed by either party, I conclude that Martinez has standing to challenge the officers' search and seizure of the Pontiac Grand Am. "Whether an individual has a cognizable Fourth Amendment right depends on two factors: whether the individual has exhibited a subjective expectation of privacy and whether society recognizes that subjective expectation as reasonable." *United States v. Cardenas*, 24 F. App'x 890, 891-92 (10th Cir. 2001). Mere possession of an automobile, however, "does not automatically satisfy this two-pronged test or guarantee standing for the possessor to contest a search of that

following the officers' seizure of the vehicle was not supported by probable cause. (Doc. 1 at 3.) Martinez's claims, therefore, pose the following two specific challenges to the officers' conduct: 1) a challenge to the constitutionality of the initial traffic stop; and 2) a challenge to the constitutionality of the officers' seizure of the vehicle and to the post-seizure search of the vehicle.

### *Reasonable Suspicion Supporting the Initial Traffic Stop*

Martinez's first challenge attacks the constitutionality of the initial traffic stop.[7] Because my evaluation of Martinez's claims under the Fourth Amendment arises in the context of Defendants' Motion for Summary Judgment based on qualified immunity, I must first determine the exact contours of the right at issue. The Fourth Amendment applies when police officers make a brief investigatory stop, such as the stop of a vehicle. *United States v. Cortez*, 449 U.S. 411, 417 (1981); *see also Terry v. Ohio*, 392 U.S. 1, 19 (1968). Such stops are permissible when the officer making the stop has reasonable suspicion "that the person has been, or is about to be engaged in criminal activity." *United States v. Hensley*, 469 U.S. 221, 227 (1985) (emphasis omitted). Reasonable suspicion exists when

---

vehicle." *Id.* at 892. Rather, to establish standing to challenge a search or seizure of a vehicle, a defendant must "'at least state that he gained possession from the owner or someone with the authority to grant possession.'" *Id.* (quoting *United States v. Arango*, 912 F.2d 441, 445 (10th Cir. 1990)). Martinez's mother owned the Pontiac Grand Am driven by Martinez on February 22, 2007. Defendants state in their *Martinez* report that they received information that Martinez used the Grand Am on prior occasions while selling narcotics. (Gallegos Aff. at ¶ 8.) Martinez's use of his mother's car permits the reasonable inference that he gained possession of the car from the owner. Accordingly, I conclude that Martinez has standing to challenge the seizure and subsequent search of the Grand Am under the Fourth Amendment.

[7] Defendants do not address the legality of the officers' initial traffic stop of Martinez's vehicle. Despite this omission, Defendants's *Martinez* report permits resolution of Defendants' entitlement to qualified immunity for their initial stop of Martinez's vehicle. Moreover, for purposes of this PFRD, I will assume that Defendants' initial action of making "traffic stops on both vehicles" constituted a seizure within the meaning of the Fourth Amendment as distinguished from a mere citizen-police encounter. *See United States v. Davis*, 94 F.3d 1465, 1468-69 (10th Cir. 1996) ("[W]hile an officer does not violate the Fourth Amendment simply by approaching an individual in a public place and asking him questions, the individual 'need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way.'" (quoting *Florida v. Royer*, 460 U.S. 491, 497-98 (1983))).

a police officer can point to "specific and articulable facts [that], taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21; *see also Alabama v. White*, 496 U.S. 325, 330 (1990) (noting that reasonable suspicion "can be established with information that is different in quantity or content than that required to establish probable cause"). "[W]hether [] an investigative detention is supported by an objectively reasonable suspicion of illegal activity does not depend upon any one factor but on the totality of the circumstances." *United States v. Soto*, 988 F.2d 1548, 1555 (10th Cir. 1993). "Depending on the totality of the circumstances, ambiguous behavior, susceptible to an innocent interpretation, may give rise to a reasonable suspicion of criminal activity." *Vondrak v. City of Las Cruces*, No. Civ. 05-0172, 2007 U.S. Dist. LEXIS 55677, at *24 (D.N.M. May 14, 2007). "As long as [an officer] has a particularized and objective basis for suspecting an individual may be involved in criminal activity, he may initiate an investigatory detention even if it is more likely than not that the individual is not involved in any illegality." *United States v. Johnson*, 364 F.3d 1185, 1194 (10th Cir. 2004).

To determine whether Defendants are entitled to qualified immunity for the traffic stop, I need not decide whether reasonable suspicion actually existed to justify the officers' traffic stop of the two vehicles. Rather, I need only determine that "a reasonable officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that [reasonable suspicion] existed in light of well-established law." *Gold v. City of Miami*, 121 F.3d 1442, 1445 (11th Cir. 1997) (internal quotation omitted). Importantly, "[w]hen an investigative detention is the subject of a § 1983 action, the defendant officer is entitled to immunity if a reasonable officer could have believed that reasonable suspicion existed to detain the plaintiff; officers need only have had 'arguable reasonable suspicion,' not actual reasonable suspicion to qualify for immunity."

8

*Vondrak*, 2007 U.S. Dist. LEXIS 55677, at *24. In light of the facts available to the officers when they initiated a traffic stop of the two vehicles, I conclude that the officers are entitled to qualified immunity for their stop of the vehicles.

Several factors support this conclusion. Prior to their encounter with Martinez on February 22, the officers received information that Martinez had resumed trafficking narcotics. Over the six months prior to the traffic stop, the officers observed traffic patterns at Martinez's residence consistent with the sale of narcotics. The officers also received information that Martinez had begun to traffic drugs along Corlett Road. Additionally, several days before their encounter with Martinez on February 22, an individual arrested for heroin possession informed the officers that he had purchased the heroin from Martinez.[8]

With this information, the officers encountered Martinez on Corlett Road. The officers observed Martinez parked alongside another car and joined by two other individuals. The officers were aware that one of the individuals, David Archuleta, had a history of heroin use. (Gallegos Aff. Ex. 1 at 5.) In addition to Archuleta's resumed use of heroin, Gallegos was aware of both Martinez's alleged drug trafficking and of his use of Corlett Road as a location for selling drugs. Based upon this information, the officers then initiated a traffic stop on the vehicles.[9]

---

[8] Defendants' *Martinez* report provides little detail regarding the source or credibility of the information received from various sources prior to the officers' encounter with Martinez on February 22, 2007. Regardless of the source of such information, the information acquired by the officers prior to the traffic stop of February 22, coupled with additional facts gleaned immediately before the traffic stop, provided Defendants with the arguable reasonable suspicion necessary to satisfy the requirements for qualified immunity. *See United States v. Danhauer*, 229 F.3d 1002, 1006 (10th Cir. 2000) ("When there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant.").

[9] Martinez's Complaint names officers Valdez and Salazar. Defendants' *Martinez* report, however, largely focuses on the information known to Gallegos at the time of the traffic stop on February 22. Because it is permissible to impute to all officers involved in an action under the Fourth Amendment the knowledge and suspicion held by all the other officers involved in the same incident, I need not separately asertain the

While each of the facts available to Defendants, taken on their own, would not necessarily be sufficient to trigger reasonable suspicion, the combination of such specific and articulable facts could, in the mind of a reasonable police officer, when taken together with the rational inferences drawn from those facts, constitute the reasonable suspicion necessary to initiate a traffic stop. *See United States v. Duguay*, 93 F.3d 346, 350 (7th Cir. 1996) (holding that while the officer's reliance on the defendants' "suspected trespassing, nefarious associates, prior drug trafficking, and presence in a high crime district might have been discretely impermissible, we concluded that the combination of these factors may arouse a reasonable suspicion in an objectively reasonable police office"). Accordingly, I conclude that a reasonable officer in the same circumstances and possessing the same knowledge as Defendants "could have reasonably believed that [reasonable suspicion] existed in light of well-established law." *Gold v. City of Miami*, 121 F.3d 1442, 1445 (11th Cir. 1997).

### *Seizure and Post-Seizure Search of Martinez's Vehicle*

Martinez also seeks a remedy under section 1983 for the officers' seizure and post-seizure search of his vehicle. Martinez contends that Defendants' warrantless seizure of his vehicle violated his Fourth Amendment rights. Additionally, Martinez argues that this unconstitutional seizure rendered invalid the post-seizure warrant and subsequent search of his vehicle.

---

knowledge or suspicions held by the individual officers present at the incident in order to evaluate their entitlement to qualified immunity. "Under the 'fellow officer' rule, 'probable cause is to be determined by the courts on the basis of the collective information of the police involved in the arrest, rather than exclusively on the extent of the knowledge of the particular officer who may actually make the arrest.'" *Karr v. Smith*, 774 F.2d 1029, 1031 (10th Cir. 1985) (quoting *United States v. Troutman*, 458 F.2d 217, 220 (10th Cir. 1972)); *see also United States v. Corral*, 970 F.2d 719, 725 n.4 (10th Cir. 1992) ("Although [the detective] himself possessed no first-hand knowledge of the package, it is well established that the police may 'pool their information' to establish probable cause." (quoting *United States v. Espinosa*, 771 F.2d 1382, 1407 (10th Cir. 1985))).

*Seizure of Martinez's Vehicle*

Martinez contends that the officers' seizure of his vehicle violated his Fourth Amendment right to be free from unreasonable searches and seizures. Although no Tenth Circuit decision directly addresses the issue, it appears that when based on probable cause, a warrantless seizure of an automobile is permissible under the automobile exception to the warrant requirement. Under the automobile exception to the warrant requirement, "probable cause *alone* suffices to justify a warrantless search of a vehicle lawfully parked in a public place, as long as the scope of the search is reasonable." *United States v. Bagley*, 772 F.2d 482, 491 (9th Cir. 1985). "It follows from the Court's opinion in [*California v. Carney*, 471 U.S. 386 (1985)], that if the existence of probable cause alone justifies the warrantless search of a vehicle parked in a public place, certainly a warrantless seizure of such a vehicle, based only on probable cause, also falls within the automobile exception." *Id.* Accordingly, Defendants are entitled to qualified immunity for their seizure of the car so long as "'a reasonable officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that [probable cause] existed in the light of well established law.'" *Vondrak*, 2007 U.S. Dist. LEXIS 55677, at *24-25 (quoting *Gold*, 121 F.3d at 1445).

In light of the facts available to Defendants at the time of the seizure, a reasonable officer in the Defendants' position could have concluded that probable cause existed to justify the seizure. Probable cause exists if "at the moment the arrest was made, 'facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense.'" *Galletta v. Deasy*, 9 F. App'x 909, 913 (10th Cir. 2001) (quoting *Jones v. City & County*

*of Denver*, 854 F.2d 1206, 1210 (10th Cir. 1988)). The *Martinez* report provides that after Valdez "turned on his emergency equipment for his unmarked unit and proceeded to initiate a traffic stop," and as the officers "drew closer to the vehicles, the driver of the green in color Grand Am drove away from" the officers. (Aguirre Aff. ¶¶ 4-6.) Moreover, in his affidavit for a search warrant, Gallegos states "Due to the previous contact we have had with Matthew Martinez, he knows our plain clothes units so therefore to conduct the surveillance on [him], we have to drive through the trailer park to conduct the surveillance." (Gallegos Aff. Ex. 1 at 6.) Belief that Martinez knew the officers and sought to avoid contact with them permits a reasonable officer to infer that the officers' arrival prompted Martinez's departure. Moreover, it is significant that Martinez's response to Defendants' *Martinez* report and Motion for Summary Judgment makes no reference to the traffic stop or disputes Defendants' characterization of Martinez's departure from the officers. To a reasonable police officer, an individual's departure from an area in a manner suggesting that the officers' arrival prompted such departure may be one factor used to establish reasonable suspicion or probable cause. *Hixon v. City of Golden Valley*, Civ. No. 06-1548, 2007 U.S. Dist. LEXIS 41738, at *25 (D. Minn. June 7, 2007) (noting that where "police officers possess some indicia of criminal activity, 'reactions, such as flight, may . . . provide the necessary information, in addition to that the officers already possess, to constitute probable cause.'" (quoting *Kolender v. Lawson*, 461 U.S. 352, 366 n.4 (1983) (Brennan, J., concurring))).

Following Martinez's departure from the scene, the officers executed a traffic stop on his vehicle. To meet the Fourth Amendment standard for reasonableness, a traffic stop must be justified in its inception and reasonably related in scope to the initial purpose of the traffic stop. *See Terry*, 392 U.S. at 20. Here, as discussed previously, a reasonable officer could have concluded that the officers'

stop of Martinez's vehicle was justified in its inception. Additionally, the officers' conduct and questioning during the stop appears to be within the scope of the initial traffic stop.

Martinez was observed in an area where he was known to conduct drug transactions. The officers notified Martinez of the reason for the stop and proceeded to question him regarding his suspected possession of narcotics. Martinez told the officers that the car, and whatever was found in the car, did not belong to him. Additionally, Gallegos noticed Martinez's behavior of "putting his hands in and out of his pockets," and, to ensure the officers' safety, asked Martinez to "pull whatever he had out of his pockets . . . ." (Gallegos Aff. ¶¶ 19-20.) *See Pennsylvania v. Mimms*, 434 U.S. 106, 112 (1977) ("The bulge in the jacket permitted the officer to conclude that [the defendant] was armed and thus posed a serious and present danger to the safety of the officer. In these circumstances, any man of reasonable caution would likely have conducted the pat-down." (internal quotation marks omitted)). Martinez emptied his pockets and produced a roll of money. Although each of these facts, taken on their own, may not have been sufficient to support a finding of probable cause, when viewed in light of the totality of the circumstances, they are sufficient to give a reasonable officer the reasonable belief that probable cause existed in light of well established law. *See United States v. Peep*, 490 F.2d 903, 906 (8th Cir. 1984) ("[T]he disclosure of the substantial cash in [the defendant's] possession gave added force to the officers' belief that [the defendant] was indeed a part of the drug operation."). Because Defendants are able to demonstrate that a reasonable officer could have believed that probable cause existed to justify the warrantless seizure of Martinez's vehicle, Defendants are entitled to qualified immunity for the seizure of Martinez's vehicle.

*Search of Martinez's Vehicle*

Martinez's complaint could also be construed as posing a challenge to the validity of the search warrant obtained after the seizure of his vehicle.[10] Martinez appears to specifically contend that the information relied on by the officers to obtain the search warrant rendered the warrant unconstitutional. In the Tenth Circuit, there is an "evidentiary presumption that when a police officer carries out a search based on a warrant it is a good faith search." *Jenkins v. Wood*, 81 F.3d 988, 995-96 (10th Cir. 1996). "Nevertheless, an officer may still face liability under § 1983 'for obtaining a warrant not supported by probable cause when the application for the warrant is so lacking in indicia of probable cause as to render official belief in its existence unreasonable, despite a magistrate's authorization for the warrant.'" *Smith v. Barber*, 316 F. Supp. 2d 992, 1017 (D. Kan. 2004) (quoting *Kaul v. Stephan*, 83 F.3d 1208, 1213 n.4 (10th Cir. 1996)). "Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable . . . will the shield" of qualified immunity be lost. *Malley v. Briggs*, 475 U.S. 335, 344-45 (1986).

Here, Martinez appears to be arguing that the search warrant obtained to search his vehicle lacked probable cause due to its reliance on information received from "heroin addicts" who stated that his vehicle was used in the transportation and distribution of drugs. (Compl. at 2-3.) The affidavit for a search warrant prepared by Gallegos on February 22, 2007, however, is not "so lacking in indicia of probable cause as to render official belief in" the existence of probable cause unreasonable. *Malley*, 475 U.S. at 344-45. The affidavit discussed several sources of information the police officers

---

[10] It does not appear that either Defendant, Valdez or Salazar, participated in the preparation of the search warrant for, or the search of, Martinez's vehicle. Rather, Gallegos appears to have prepared the search warrant and conducted the search. Martinez fails to provide any explanation of how Valdez and Salazar may be held liable under § 1983 for a search warrant prepared by an officer not named as a Defendant.

14

received describing Martinez's participation in drug trafficking. Specifically, Gallegos stated in the affidavit that "[w]ithin the past 72 hours . . . a person who wishes to remain anonymous and who is always at the Naranjo trailer park sees the Green Grand Am parked at Elsie Martinez's . . . residence . . ." and that a "large amount of traffic drives to the . . . residence for approximately 3-4 minutes, then leaves." (Gallegos Aff. Ex. 1 at 6.) Such traffic patterns, according to Gallegos, are "consistent with the sale of narcotics." (*Id.*) Gallegos also stated that Adult Probation and Parole received similar information regarding Martinez's drug trafficking. Lastly, Gallegos' affidavit stated that the state police officers had recently arrested an individual for possession of heroin who "stated that he wish[ed] to stop using drugs and volunteered the information that he had just met with Matthew Martinez prior to being arrested and purchased the heroin from Matthew Martinez." (*Id.* at 7.) Such information, coupled with the factors justifying the officers' stop and ultimate seizure of Martinez's vehicle, provides sufficient evidence to give Defendants reasonable belief that probable cause existed to support the application for the search warrant.

### Martinez's Due Process Claim Against the Officers

Martinez's Complaint also raises a claim under the Due Process Clause of the Fourteenth Amendment. Martinez contends that Defendants' confiscation of his vehicle deprived him of property without the due process of law. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotation omitted). Where the plaintiff alleges a deprivation of property interest occurring as a result of "'a random, unauthorized act,' the Fourteenth Amendment's due process requirement is satisfied if the state provides an adequate post-deprivation remedy." *Haynes v. Attorney General of Kansas*, 03-4209, 2005 U.S. Dist. LEXIS 24391, at *15 (D. Kan. 2005)

(quoting *Parratt v. Taylor*, 451 U.S. 527, 541-43 (1981)); *see Hudson v. Palmer*, 468 U.S. 517, 533 (1983) (holding that the rule established in *Parratt* applies to intentional deprivations of property). Thus, claims arising out of random and unauthorized acts of state officials "are not cognizable under § 1983 when a state's post deprivation remedies are adequate to protect a plaintiff's procedural due process rights." *Haynes*, 2005 U.S. Dist. LEXIS 24391, at *15.

Defendants' traffic stop and subsequent seizure of Martinez's vehicle falls within the type of random and unauthorized action that pre-deprivation remedies cannot anticipate. In such situations, the Tenth Circuit has expressed its unwillingness to "supply procedural requirements in addition to already-established criminal procedure under the Constitution and state law." *Becker v. Kroll*, 494 F.3d 904, 921 (10th Cir. 2007). Moreover, New Mexico provides adequate post-deprivation remedies sufficient to satisfy the Fourteenth Amendment's Due Process requirements. Specifically, the New Mexico Tort Claims Act waives immunity for liability arising out of a "violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and the laws of the United States . . . ." N.M. Stat. Ann. § 41-4-12 (2007). Such post-deprivation remedies appear adequate to satisfy the requirements of the Due Process Clause. Accordingly, I recommend that Defendants' Motion for Summary Judgment on Martinez's claim under the Fourteenth Amendment's Due Process Clause be granted.

## RECOMMENDATION

For the reasons stated herein, I recommend that:

1. Defendants' Motion for Summary Judgment as to Martinez's claims under the Fourth Amendment be granted; and

2. Defendants' Motion for Summary Judgment as to Martinez's claim under the Fourteenth Amendment be granted.

> **THE PARTIES ARE NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636 (b)(1). **A party must file any objections with the Clerk of the District Court within the ten-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

_____
WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE